IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELLY UCHYTIL,

                     Plaintiff,                              CV-08-0303-ST

        v.                                       OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

                     Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Kelly Uchytil ("Uchytil"), seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 USC §§ 401-34. This court has jurisdiction under

42 USC §§ 405(g) and 421(d). All parties have consented to allow a Magistrate Judge to enter

final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

The Commissioner has filed a motion to remand for further proceedings (docket #18). For the reasons that follow, that motion is GRANTED.

## ADMINISTRATIVE HISTORY

Uchytil filed an application for disability benefits on May 19, 2004, alleging disability due to major depression, anxiety, psychotic features, and panic attacks with an alleged onset date of January 6, 2003.  Tr. 58-59.[1]  His claim was denied initially and on reconsideration.  Tr. 30-31.  After Uchytil requested review by an Administrative Law Judge ("ALJ"), a hearing was held before ALJ Timothy Terrill on January 5, 2007, at which Uchytil (represented by counsel), a vocational expert, and an independent medical expert appeared and testified.  Tr. 471-523.  On May 7, 2007, the ALJ issued an opinion finding Uchytil not disabled.  Tr. 19-29.  On November 13, 2007, the Appeals Council denied review (Tr. 6-8), making the ALJ's opinion the Commissioner's final decision.  20 CFR §§ 404.981, 422.210; *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).

## BACKGROUND

Born in 1953, Uchytil was age 52 when he alleges his disability began and age 54 on the date of the ALJ's decision.  Tr. 30-31.  He has a high school education and past work experience as a packer, foundry worker, utility worker, and hazmat specialist.  Tr. 65, 92-98.  Uchytil testified that he quit working in January 2003 after hearing voices which told him "you're going down, and you're going down hard."  Tr. 478-79.  In addition to hearing voices, he was suffering severe anxiety which kept him from wanting to appear in public.  Tr. 479.

---

[1] References to "Tr." are to the Administrative Record filed July 31, 2008 (docket #16).

On February 7, 2003, he went to the emergency room ("ER") on referral from his psychologist, Dr. Thomas Deschler, Ph.D., and primary care physician, Dr. Gerald. King, D.O., for a psychiatric evaluation.  Tr. 227.  He denied hearing voices at this time, but instead claimed he heard "squishing sounds" similar to persons walking on wet carpet.  *Id*.  He also reported occasional olfactory hallucinations.  *Id*.  After conferring with Dr. King, the ER physician assessed anxiety and prescribed anxiolytic medication.  *Id*.

Uchytil went to the ER several more times over the following months.   He was admitted on March 7, 2003, on a voluntary basis, due to suicidal ideation.   Tr. 220-22.  The examining physician prescribed additional medications, performed a mental status examination, and assigned a GAF of 40.[2]  Tr. 221.  On April 15, 2003, he was seen at the ER where he reported he had ingested medication with suicidal ideation.  Tr. 210-12.  He was treated and released without complication.

Three treating physicians worked extensively with Uchytil over the next several years and issued opinions on his functional capacity for work.  Dr. James Farley, M.D., a psychiatrist, treated Uchytil on a monthly basis from February 19, 2003, through at least the end of 2006 for depression, anxiety, and auditory hallucinations.  Tr. 396, 354-434, 451-66.  Dr. Deschler, a psychologist, saw Uchytil frequently during 2003 and a few times in 2004.  Tr. 294-315.  The records of these visits show that Dr. Deschler primarily counseled Uchytil while Dr. Farley prescribed psychotherapy medication.  Dr. King served as Uchytil's primary care physician

---

[2]  The GAF is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000) ("DSM-IV").  It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations.  A GAF between 31 and 40 indicates:  "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . )."  *Id* at 34.

during the period covered by the medical record.  Tr. 321-353, 435-50.  These three physicians coordinated their services in treating Uchytil's mental disease.

Each of these physicians opined on the functional capacity Uchytil retained in light of his ongoing struggle with mental illness.  They provided their opinions on check-the-box forms titled "Physician's Statement" provided by Uchytil which were not developed or prepared by the Social Security Administration ("Administration") although they generally use the same terminology as the Administration.  *See* Tr. 294-95, 350-51, 371-72, 435, 452-53.

In February 2005, Dr. Farley diagnosed Uchytil with major depression, recurrent and severe with mood congruent psychotic features.  Tr. 371.  He noted Uchytil's symptoms included decreased energy, loss of interest in activities, feelings of guilt and worthlessness, persistent disturbances of mood or affect, difficulty concentrating or thinking, seclusiveness, sleep disturbance, thoughts of suicide, and appetite disturbance with weight change.  *Id*.  He concluded that Uchytil was markedly limited in his daily activities and in maintaining concentration, persistence, and pace, was extremely limited in his ability to maintain social functioning, and was subject to continuous and ongoing episodes of decompensation.  *Id*.

In March 2005, Dr. Deschler filled out the same form, made the same diagnosis, and noted the same symptoms and functional limitations.  Tr. 294.  Dr. King's identical opinion followed in April 2005.  Tr. 350-51.

At Uchytil's request, both Dr. King and Dr. Farley completed "Physician's Statement" forms in December 2006.  Dr. Farley's diagnosis increased in severity to Schizoaffective Disorder due to Uchytil's ongoing recurrent, severe major depression which was compounded by mood problems and auditory hallucinations.  Tr. 452.  These hallucinations were one of

Uchytil's persistent complaints throughout the medical record.  *See, e.g.*, Tr. 367, 376, 451, 458, 460.  Dr. Farley again indicated the full panoply of symptoms he had previously identified in February 2005, but increased his assessment of the severity of Uchytil's disease on his functional limitations.  He now indicated Uchytil was extremely, rather than markedly, limited in his daily activities and in maintaining concentration, persistence, and pace, and again was extremely limited in his ability to maintain social functioning.  Tr. 452.  Dr. Farley continued to indicate continuous and ongoing episodes of decompensation.  *Id*.

Just as in 2005, Dr. King's December 2006 opinion matches Dr. Farley's in terms of diagnosis, symptoms, and functional limitations.  Tr. 435.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months[.]"  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996) (citations omitted).  To be eligible for disability benefits, Uchytil must establish that his disability began prior to December 31, 2008, the date he was last eligible for DIB.  42 USC § 423; 20 CFR §§ 404.130, .131.

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 CFR § 404.1520.

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  20 CFR §§ 404.1520(a)(4)(I), (b).  If so, then the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment."  20 CFR §§ 404.1520(a)(4)(ii), (c).  If not, then the claimant is not disabled.

At step three, the Commissioner determines whether the severe impairment "meets or equals" one of the impairments listed in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing of Impairments").  20 CFR §§ 404.1520(a)(4)(iii), (d).  If so, then the claimant is disabled.

If the analysis proceeds beyond step three, the Commissioner must determine the claimant's residual functional capacity ("RFC").  20 CFR § 404.1520(e).  The RFC is an assessment of work related activities the claimant can perform on a regular and continuing basis, despite the limitations imposed by his impairments.  20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Using the RFC, the Commissioner determines at step four whether the claimant can perform past relevant work.  20 CFR §§ 404.1520(a)(4)(iv), (f).  If so, then the claimant is not disabled.

Finally, at step five, the Commissioner determines whether the claimant is able to perform other full-time work in the national economy.  20 CFR §§ 404.1520(a)(4)(v), (g), 404.1566.  If not, then the claimant is disabled.

At steps one through four, the burden of proof is on the claimant.  *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

///

///

///

## ALJ'S FINDINGS

At steps one and two, the ALJ concluded that Uchytil has the severe impairments of asthma, depression, and anxiety, in addition to a number of nonsevere impairments. Tr. 21.

At step three, the ALJ rejected the opinions of Uchytil's treating physicians and concluded that his impairments do not meet or equal one of the listed impairments. Tr. 24-26.

The ALJ found Uchytil possesses the RFC for unlimited exertion with environmental and vocational non-exertional limitations. Tr. 26. Uchytil's environmental limitations preclude him from work which requires exposure to chemical fumes, dust, or gasses. *Id*. His vocational limitations restrict him to simple, routine, repetitive type work, requiring no public interaction and no more than occasional interaction with co-workers. *Id*. The ALJ rejected the testimony of Uchytil and his wife which suggested greater functional limitations. Tr. 27.

At step four, the ALJ concluded that Uchytil's RFC eliminates the possibility of returning to his past relevant work. Tr. 28

Finally, at step five, the ALJ concluded that considering Uchytil's age, education, work experience, and RFC, work exists in significant numbers in the national economy that Uchytil can perform. Tr. 28-29. As support, the ALJ relied upon the testimony of a VE who identified multiple jobs consistent with Uchytil's RFC. Tr. 29.

## DISCUSSION

Uchytil argues that the ALJ erred in rejecting the opinions of his treating physicians which require a finding that he meets a listed impairment and his subjective testimony.

The Commissioner agrees that the ALJ erred, but asserts that it was harmless error, and that due to unresolved issues, this court should remand for further proceedings.

I.    **Legal Standards**

Because the Commissioner agrees that the ALJ's decision contains legal error and is not

supported by substantial evidence, the issue is whether to reverse and remand for further

proceedings or for an award of benefits.  This decision is within the court's discretion.  *Harman*

*v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000).

A remand for an award of benefits is appropriate when no useful purpose would be

served by further administrative proceedings or when the record has been fully developed and

the evidence is not sufficient to support the Commissioner's decision.  *Rodriguez v. Bowen*, 876

F2d 759, 763 (9th Cir 1989).  Thus, improperly rejected evidence should be credited as true and

an immediate award of benefits directed where "(1) the ALJ has failed to provide legally

sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be

resolved before a determination of disability can be made, and (3) it is clear from the record that

the ALJ would be required to find the claimant disabled were such evidence credited."  *Harman*,

211 F3d at 1178, citing *Smolen v. Chater*, 80 F3d 1273, 1292 (9th Cir 1996).  If it is not clear that

the ALJ would be required to award benefits were the improperly rejected evidence credited,

then the court has discretion whether to credit the evidence.  *Connett v. Barnhart,* 340 F3d 871,

876 (9th Cir 2003).

II.    **Consultative Examination**

The Commissioner first argues that any error committed by the ALJ is excused because

Uchytil failed to appear at a consultative examination ordered by the ALJ, rendering analysis of

the remaining issues superfluous and unnecessary.  If a claimant does "not have a good reason

for failing or refusing to take part in a consultative examination or test" arranged by the ALJ,
then the ALJ "may find that [the claimant is] not disabled."  20 CFR § 404.1518.

If the Commissioner is correct, then this case should be reversed, rather than remanded
for further proceedings.  However, this court has found no cases to support this severe reading of
20 CFR § 404.1518.

The regulation clearly gives the Commissioner the option to deny a claim where a
claimant fails to appear at a consultative examination.[3]  *See Pearce v. Sec'y of Health & Human
Svcs.*, 680 F Supp 1264, 1268 (CD Ill 1988) (upholding ALJ's decision to deny benefits after
claimant refused to cooperate at a consultative examination); *Calvert v. Sullivan*, 1991 WL
105200, *2 (D Kan May 3, 1991) (same, but also finding substantial evidence supported
nondisability determination).  The regulation does not mandate this result, however.  *See Deuter
v. Schweiker*, 568 F Supp 1414, 1420-21 (ND Ill 1983) (ALJ erred in finding claimant had no
severe impairment, even though the claimant refused to schedule a consultative examination).
The use of the verb "may" by the regulation affords the Commissioner discretion to deny a
claim.  But if the Commissioner proceeds to use his discretion to evaluate the case, he cannot
then overlook the claimant's fault as a free pass to commit error.  Rather, once the ALJ elects to
proceed with the analysis, he must comply with the applicable standards.

Of course the claimant's failure to attend a consultative examination may factor into the
ALJ's analysis, for example, as a positive factor reducing the claimants credibility, *see Geraldo
v. Sullivan*, 1991 WL 311907, *5 (CD Cal July 31, 1991) (so concluding), or as a negative factor
depriving the claimant of the opportunity to carry his burden where the other medical evidence is

---

[3]  The regulations limit when and how such an examination may be ordered.  20 CFR §§ 404.1519a-1519t.

sufficient, *see Deuter*, 568 F Supp at 1420 ("It is of course true – and a necessary corollary of the statute's allocation of the burden of proof to the disability claimant, 42 [USC] § 423(d)(5) – that a claimant who fails to appear at a consultative examination and who, as a result, is unable to show a disability, may have his claim dismissed.").  But when the ALJ proceeds to deny the claim on some other basis, this court is permitted to consider the merits of that decision.  Evidently the Commissioner agrees with this conclusion by urging reversal for further administrative proceedings due to errors in the ALJ's opinion.

**III.    Utility of Further Proceedings**

The issue then is whether further proceedings at the administrative level would have any utility, thus necessitating a remand for further development of the record.

If fully credited, the opinions of Uchytil's treating physicians mandate a finding of disability at step three pursuant to § 12.04 and § 12.06 of the Listing of Impairments.  These two listed impairments require the Commissioner to first evaluate the pertinent symptoms, signs, and laboratory findings to determine whether Uchytil has a medically determinable mental impairment that satisfies the diagnostic criteria ("paragraph A") of the listing.  20 CFR § 404.1520a(b)(1); Listing of Impairments, §12.00A.  Next the Commissioner must evaluate the degree of functional limitation resulting from the mental impairments by utilizing the criteria in either paragraph B or C of the listing.  20 CFR § 404.1520a(b)(2).  The B criteria include four categories:  (1) restrictions of activities of daily living; (2) difficulties in maintaining social functioning; (3) difficulties in maintaining concentration, persistence or pace; and (4) extended periods of decompensation.  The required level of severity is shown if the claimant establishes marked limitation in at least two of the four categories; marked impairment in the fourth

category is demonstrated by repeated episodes of decompensation.  20 CFR § 416.920a(c); Listing of Impairments, § 12.00C.  If the paragraph B criteria are not satisfied, the Commissioner next evaluates whether the claimant meets the paragraph C criteria.  Listing of Impairments, §12.00A.

There is no dispute that Uchytil meets the diagnostic or "paragraph A" criteria of both § 12.04 and § 12.06.  Tr. 25.  The issue is whether Uchytil has satisfied the functional criteria in paragraphs B or C.  According to Uchytil's treating physicians, he meets the paragraph B criteria. Tr. 294, 350-51, 371, 435, 452.  According to the medical expert who testified at Uchytil's hearing, he does not meet either the paragraph B or C criteria.  Tr. 496-97.  The ALJ adopted the latter opinion and found that Uchytil did not meet or equal either of these listings. Tr. 25-26.

The testimony of a nonexamining physician, is, by itself, insufficient to support the ALJ's decision to reject the opinions of Uchytil's treating physicians.  *Ryan v. Comm'r of Soc. Sec.*, 528 F3d 1194, 1202 (9th Cir 2008).  However, the ALJ did not rely on the medical expert's opinion alone.  The ALJ also rejected the opinions of Uchytil's treating physicians because they were not supported by objective testing, relied too heavily on Uchytil's subjective complaints, and were recorded on "check-the-box" forms provided by Uchytil's attorney which do not define or explain the meaning of the terms or reveal the basis for the opinions.  A review of the record supports these criticisms.

To be acceptable, a physician's opinion must be supported by medically acceptable clinical and laboratory diagnostic techniques.  *See* 20 CFR § 404.1527(d)(2).  The medical evidence does not show that Uchytil ever received formal psychological testing.  The check-the-

box forms completed by Uchytil's physicians do not contain definitions of the terms used, and the physicians did not explain the medical basis for the extreme restrictions they indicated.

Given this paucity of objective clinical evidence, it was reasonable for the ALJ to question the opinions of Uchytil's treating physicians and to seek out objective testing to confirm or contradict their conclusions. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005) ("[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Crane v. Shalala*, 76 F3d 251, 253 (9th Cir 1996) (permissible for ALJ to reject "check-off reports that did not contain any explanation for the bases of their conclusions"). At the hearing, the testifying medical expert commented extensively on the lack of a formal psychological evaluation in the file and opined that one would be helpful to determine the extent of Uchytil's mental illness. Tr. 498-503. In reliance on this testimony, the ALJ ordered a consultative examination.

Uchytil's failure to attend the testing deprived the ALJ of the opportunity to fully develop the record. Uchytil now argues that his case should be reversed and remanded for an award of benefits, in part, because the record lacks any medical opinion by an examining physician which disagrees with the conclusory opinions of his physicians. Uchytil should not be permitted to take advantage of the lack of evidence to which he contributed. Psychological testing may confirm the severe diagnoses of his treating physicians, in which case the ALJ would likely have no other option but to find him disabled. Alternatively, objective testing may contradict Uchytil's physicians, in which case the outcome is less certain. Whatever the result, it is the ALJ's prerogative to weigh this new medical evidence in the first instance. *See Andrews v. Shalala*, 53 F3d 1035, 1041 (9th Cir 1995) ("Where the opinion of the claimant's treating physician is

contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.") (citation omitted); *Morgan v. Comm'r of Soc. Sec. Amin.*, 169 F3d 595, 601 (9th Cir 1999) ("Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.") (internal quotes, citation omitted).

Of course, it is illogical for the ALJ to reject the opinions of the treating physicians for lacking sufficient objective support in the medical record, and then to accept the opinion of a nonexamining physician whose opinion is based entirely on the same medical record. Because the ALJ concluded he could not accept the treating physician's opinions of Uchytil's functional limitations due to a lack of objective medical evidence, it was error to accept the medical expert's opinion which suffered the same problem.

Thus, because of the ambiguities and insufficient development of the medical evidence in the record, this case must be reversed and remanded for additional proceedings. These proceedings should include further development of any medical evidence available from Uchytil's treating physicians that may support their opinions, *see* 20 CFR § 1512(d), (e), a consultative examination in compliance with 20 CFR §§ 1519a-1519t, and any other procedure the Commissioner deems necessary.

**IV.    Additional Errors**

In addition to the inadequate development of the medical record, the Commissioner concedes that the ALJ committed additional legal error when weighing the testimony of Uchytil and his wife.

The ALJ is required to give clear and convincing reasons for concluding a claimant's subjective symptom testimony lacks credibility where the claimant's condition could reasonably be expected to produce the symptoms complained of and in absence of an affirmative finding of malingering. *See Lingfelter v. Astrue*, 504 F3d 1028, 1036 (9th Cir 2007). When assessing a claimant's credibility, general findings are insufficient; the ALJ must set forth with specificity the testimony that is not credible and the evidence which shows it. *Lester v. Chater*, 81 F3d 821, 834 (9th Cir 1995); SSR 97-7p, 1997 WL 374186 (July 2, 1996).

Similarly, lay witness testimony concerning a claimant's ability to work is competent evidence which "'*cannot* be disregarded without comment.'" *Bruce v. Astrue*, 2009 WL 539945, *2 (March 5, 2009) (emphasis in original), quoting *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). For an ALJ to dismiss the testimony of a lay witness, "the ALJ must provide reasons, 'that are germane to each witness,'" *id*, quoting *Nguyen*, 100 F3d at 1467, and "must be specific." *Id*, quoting *Stout v. Comm'r*, 454 F3d 1050, 1054 (9th Cir 2006).

Both the claimant and his wife provided statements concerning the extent of his limitations. The ALJ rejected both of their statements in one brief paragraph:

> In review, the undersigned finds their testimony is not entirely credible especially in regard to their allegations regarding the nature of [Uchytil's] impairments, symptomology and alleged resulting functional limitations. Overall, their allegations are not consistent with or supported by the medical evidence of record.

Tr. 27.

This is inadequate. The ALJ's lack of analysis not only flies in the face of Ninth Circuit precedent, but also is inconsistent with the medical evidence in the record. On remand, the ALJ must address this deficiency.

Finally, the ALJ makes no mention of whether Uchytil possesses the RFC to work eight hours a day, five days a week.  This also is error.  *See  Kelley v. Apfel*, 185 F3d 1211, 1214 (11th Cir 1999) ("at Step Five, . . . only an ability to do full-time work will permit the ALJ to render a decision of not disabled"); *see also*, *Bladow v. Apfel*, 205 F3d 356, 359-60 (8th Cir 2000) (remanding for clarification of claimant's RFC in light of *Kelley*).  Some of the evidence in the record seems to indicate that Uchytil was unable to even work six hours a day.  Tr. 410, 416, 418.  The ALJ may not pass over this evidence without comment and must consider it on remand.

## **ORDER**

The Commissioner's motion to remand (docket #19) is GRANTED.  This case is remanded pursuant to sentence four of 42 USC § 405(g) for further administrative proceedings consistent with this Opinion.

DATED this 19th day of March, 2009.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge